1

2

3

4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6                              SAN JOSE DIVISION

7

8    VINCENT PASTORE,                    Case No.   15-cv-01844-EJD

            Plaintiffs,                  **ORDER GRANTING DEFENDANTS'**
9                                        **MOTION TO DISMISS FIRST**
       v.                                **AMENDED COMPLAINT WITH**
10                                       **LEAVE TO AMEND IN PART**
11   COUNTY OF SANTA CRUZ, et al.,
                                         Re: ECF No. 55
            Defendants.
12

13

14          Plaintiff Vincent Pastore ("Mr. Pastore") brings this action alleging that Defendants

15   County of Santa Cruz (the "County"), Robyn Grant ("Ms. Bolster-Grant"), Tony Falcone ("Mr.

16   Falcone"), Kevin Fitzpatrick ("Mr. Fitzpatrick"), and Kent Edler ("Mr. Edler," and with Ms.

17   Bolster-Grant, Mr. Falcone, and Mr. Fitzpatrick, the "Individual Defendants," and collectively

18   with the County, "Defendants") undertook various improper nuisance abatement actions with

19   respect to Plaintiff's properties, and that these actions violated Plaintiff's constitutional and

20   property rights.  *See generally* First Am. Compl. ("FAC"), ECF No. 51.[1]  Now pending before the

21   Court is Defendants' Motion to Dismiss the First Amended Complaint (the "Motion").  *See* Mot.,

22   ECF No. 55.  The Motion was fully briefed on May 18, 2023, and the Court took the matter under

23   submission without oral argument pursuant to Civil Local Rule 7-1(b).  Having reviewed the

24

25   _____

26   [1] Both the original complaint and the FAC included a co-plaintiff, Joseph Lenchner.  *See* Compl.,
     ECF No. 1; FAC.  On March 10, 2022, the parties filed a joint case management statement that
27   informed the Court that Mr. Lenchner had passed away.  *See* ECF No. 36.  Because no motion to
     substitute was made within 90 days of the filing of the statement, Mr. Lenchner's claims under the
     FAC are DISMISSED WITH PREJUDICE.  *See* Fed. R. Civ. P. 25(a)(1).
28   Case No.: 15-cv-01844-EJD
     ORDER GRANTING DEFS.' MOT. TO DISMISS FIRST AM. COMPL.
                                            1

United States District Court
Northern District of California

parties' submissions and the relevant law, the Court GRANTS the Motion with leave to amend in part.

## I.      BACKGROUND

### A.      Factual Allegations

Unless otherwise specified, the following allegations are drawn from the FAC.

#### 1.      Inspection and Abatement Orders

This action concerns two parcels owned by Mr. Pastore in a rural part of Santa Cruz County:  Parcel No. 106-331-12 ("Parcel 12") and Parcel No. 106-331-13 ("Parcel 13" and, with Parcel 12, the "Properties").  *See* FAC ¶¶ 7–9.  Mr. Pastore has owned, continuously farmed, and paid taxes on the Properties for more than 15 years.  *See id.* ¶ 7.

In early April 2014, Mr. Fitzpatrick submitted an affidavit in support of a property inspection warrant in which he asserted, on information and belief, that the County had received one or more citizen complaints about the Properties.  *See id.* ¶¶ 7–8.  On April 7, 2014, the County received a warrant to inspect Parcel 13.  *See id.* ¶ 8.  On April 9, 2014, Mr. Edler and Mr. Falcone, on behalf of the County, performed an inspection and claimed multiple violations, including grading, water pumping, and cannabis cultivation.  *See id.*  The County subsequently issued an abatement order requiring Mr. Pastore to remove various items on Parcel 13, including solar panels affixed to an "array shed."  *See id.*; *see also* Decl. of Ryan Thompson ("Thompson Decl."), Exh. B, at 1 (describing "Order to Abate" issued by the County on April 9, 2014), ECF No. 55-1.[2] The County additionally issued an abatement order declaring the parcel a public nuisance and requiring Mr. Pastore to abate all cannabis growing on the property within 10 days.  *See* FAC ¶ 11; *see also* Thompson Decl., Exh. C, at 1 (describing abatement order issued on May 27, 2014).

With respect to the abatement order requiring the removal of items from Parcel 13, Mr. Pastore alleges that he removed the solar panels and other listed items and loaded them onto a trailer as a temporary placement, and that he had fully complied with the abatement order by May

---

[2] The Court takes judicial notice of the documents cited in this Background section.  *See infra*, at Part II.

29, 2014.  *See* FAC ¶ 8.  Mr. Pastore maintains that none of the removed items were in use, and that the trailer remained on Parcel 13 but was located 250 feet away from the array shed.  *See id.*

With respect to the public nuisance abatement order, Mr. Pastore alleges that he removed all of the cannabis plants within a week of the issuance of the abatement order, even though the plant cultivation was lawful.  *See id.*  He further alleges that he and two other individuals—all three of whom were medical marijuana patients—each subsequently planted 10 personal medical marijuana plants on Parcel 13 in a manner compliant with state and local codes.  *See id.*

### 2.     Further Government Actions

On June 2, 2014, County employees conducted a further investigation of Parcel 13.  *See* FAC ¶ 9.  Mr. Pastore also alleges that the inspectors also entered Parcel 12 without a warrant to inspect or search the premises.  *See id.*  The County employees confiscated all of Mr. Pastore's personal property on Parcels 12 and 13, including the solar panels Mr. Pastore had placed in the trailer and a water pump controller.  *See id.*  The items confiscated from Parcel 12 included batteries, wiring, a back-up generator, and additional solar panels.  *See id.*  Mr. Pastore alleges that the County kept his property for 88 days, and that various trees, grapes, and cover crops on the Properties died during this time.  *See id.*

On or about August 19, 2014, or August 20, 2014, Ms. Bolster-Grant and other County employees destroyed the 30 medical marijuana plants growing on Parcel 13.  *See* FAC ¶ 12.  Mr. Pastore alleges that "[c]oncurrent with" these August 2014 events, County employees contacted the California Department of Forestry and Fire Protection ("DFFP") and requested an inspection of Parcel 13.  DFFP subsequently alleged that Mr. Pastore had performed unlawful timber operations on Parcel 13; Mr. Pastore alleges that this charge was false and that the County solicited the complaint from DFFP despite knowing it was false.  *See id.* ¶ 13.

On April 7, 2015, Mr. Falcone informed Mr. Pastore that a permitted residence was required to pump water from the existing permitted well.  *See id.* ¶ 15.  The Properties are zoned as residential/agricultural, with agriculture as a primary use for the Properties.  *See id.* ¶ 16.  Mr. Pastore alleges that the terrain on the Properties would require a "long, steep[,] and narrow access

United States District Court
Northern District of California

1  road to any building sites" such that it is "highly unlikely that the [County] would ever allow [Mr.

2  Pastore] to build a residence on either" parcel.  *See id.*  Accordingly, Mr. Pastore alleges, the

3  County and its agents have deprived Mr. Pastore of "any viable use of his [P]roperties[,] including

4  use as a non-commercial family farm."  *See id.*

### 3.      Prior Legal Proceedings

#### a.      Civil Proceedings

7          On September 17, 2014, Mr. Pastore filed claims with the County for damages based on

8  the June 2, 2014 inspection, which Mr. Pastore alleged constituted trespass, theft, and deprivation

9  of property, and the August 2014 events, which he alleged constituted trespass and destruction of

10 property.  *See id.* ¶¶ 10, 12.  The County denied both claims on October 23, 2014.  *See id.*  Mr.

11 Pastore then filed an administrative appeal with the County's planning department with respect to

12 the claim based on the June 2014 events; the appeal was denied following an administrative

13 hearing.  *See* FAC ¶ 10.  Mr. Pastore next filed a judicial appeal from the denial of the

14 administrative appeal, which the County successfully moved to strike.  *See id.*

15          Mr. Pastore additionally alleges that he has previously brought a lawsuit against the

16 County for the unlawful destruction of marijuana plants on his property, and that the action

17 resulted in a financial settlement.  *See id.* ¶ 17.  He further alleges that the County and its

18 employees are harassing him in retaliation for that lawsuit.  *See id.*

#### b.      Criminal Proceedings

20          On June 24, 2014, the Santa Cruz County District Attorney's Office filed criminal charges

21 against Mr. Pastore for marijuana cultivation and timber harvesting.  *See* FAC ¶ 14; Thompson

22 Decl., Exh. A.  At some point over the course of the proceedings, Mr. Pastore was found to be in

23 criminal contempt and served 15 days of jail time.  *See* FAC ¶ 15.  In October 2017, Mr. Pastore

24 was convicted by a jury of the following four misdemeanor counts under County regulations:  (1)

25 grading without a permit; (2) development activity within a riparian corridor without a permit; (3)

26 land clearing; and (4) construction without a permit.  *See* Thompson Decl., Exh. E.  Mr. Pastore

27 was sentenced to 210 days of jail time and placed on conditional probation.  *See id.* at Exh. F.  On

28 Case No.: 15-cv-01844-EJD
ORDER GRANTING DEFS.' MOT. TO DISMISS FIRST AM. COMPL.

United States District Court
Northern District of California

1  November 30, 2021, the Santa Cruz County Appellate Division affirmed the criminal convictions.

2  *See id.* at Exh. G.

3      **B.**      **Procedural History**

4         Mr. Pastore filed this suit on April 23, 2015.  *See* Compl., ECF No. 1.  On November 4,

5  2015, the Court granted the Defendants' unopposed motion to stay proceedings in this action

6  pending a final ruling in four related state actions, and administratively closed the case.  *See* ECF

7  No. 32.  Mr. Pastore sought to reopen the case in January 2022, following the Santa Cruz County

8  Appellate Division's November 2021 order affirming Mr. Pastore's criminal convictions.  *See*

9  ECF No. 34.  Defendants objected to Mr. Pastore's request on the ground that the action is barred

10  following Mr. Pastore's criminal convictions based on the same underlying events.  *See, e.g.*, ECF

11  No. 36.

12         Due to health issues of counsel and a resulting substitution of counsel, no action was taken

13  on the issue of reopening the case until April 13, 2023, when the Court held an initial case

14  management conference and required Mr. Pastore to file his proposed amended complaint.  *See*

15  ECF Nos. 38, 44, 52.  Mr. Pastore filed the operative FAC that same day, alleging the following

16  seven claims for relief:  (1) retaliation for exercise of federal and California constitutional rights in

17  violation of 42 U.S.C. § 1983; (2) deprivation of the Fourteenth Amendment right to equal

18  protection in violation of 42 U.S.C. § 1983; (3) inverse condemnation (taking) in violation of the

19  Fifth Amendment to the United States Constitution and Article I, Section 19 of the California

20  Constitution; (4) deprivation of substantive and procedural due process in violation of the

21  Fourteenth Amendment to the United States Constitution and Article I, Sections 7 and 15 of the

22  California Constitution; (5) deprivation of California constitutional rights in violation of the Bane

23  Act, Cal. Civil Code § 52.1.(b); (6) trespass; and (7) conversion.  *See* FAC ¶¶ 18–51.

24         Defendants filed the instant Motion on April 27, 2023.  Mr. Pastore filed an opposition on

25  May 11, 2023, and Defendants filed a reply on May 18, 2023.  *See* Opp'n, ECF No. 58; Reply,

26  ECF No. 59.  The hearing was set for August 31, 2023, and the Court took the Motion under

27  submission without oral argument on August 29, 2023.

28  Case No.: 15-cv-01844-EJD
ORDER GRANTING DEFS.' MOT. TO DISMISS FIRST AM. COMPL.

## II.     REQUEST FOR JUDICIAL NOTICE

Defendants request the Court take judicial notice of eight documents consisting of criminal complaints, decisions, and orders pertaining to this action that were issued by administrative hearing officers and the Santa Cruz County Superior Court, as well as a section of the Santa Cruz County Code. *See* Mot. 16–17.  Mr. Pastore does not oppose the request.  *See generally* Opp'n.

The doctrine of judicial notice is one of the two doctrines—the other being the doctrine of incorporation by reference—under which a district court may consider material outside the pleadings without converting a motion to dismiss into a motion for summary judgment.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).  A court may judicially notice a fact that is "not subject to reasonable dispute," *i.e.*, a fact that is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2).  If a judicially noticeable document contains disputed facts, the court may notice the document, but not the disputed facts therein.  *Khoja*, 899 F.3d at 999 ("[A] court cannot take judicial notice of disputed facts contained in [judicially noticeable] public records.") (citation omitted).

Because each document at issue is government-issued and a matter of public record, the Court GRANTS Defendants' request and will take judicial notice of the documents, although it does not take notice of any disputed facts within the documents.  *See, e.g.*, *Diamond S.J. Enterp., Inc. v. City of San Jose*, 395 F. Supp. 3d 1202, 1217–18 (N.D. Cal. 2019) (taking judicial notice of city and county records and decisions because "[p]ublic records, including judgments and other publicly filed documents, are proper subjects of judicial notice") (citing *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007); *Madani v. County of Santa Clara*, No. 16-CV-07026, 2017 WL 1092398, at *4 ("The . . . appeals to the Santa Clara County Personnel Board, and the transcript of the hearing before the Santa Clara County Personnel Board are records of state and county administrative agencies that are judicially noticeable.") (citing *United States v. 14.02 Acres*, 547 F.3d 943, 955 (9th Cir. 2008)); *Soublet v. County of Alameda*, No. 18-cv-03738, 2019 WL 12517063, at *16 n.8 (finding county code section proper subject of judicial notice) (N.D.

Case No.: 15-cv-01844-EJD
ORDER GRANTING DEFS.' MOT. TO DISMISS FIRST AM. COMPL.

Cal. Dec. 6, 2019) (citing *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004)).

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the plaintiff pleads facts permitting the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  The allegations must show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When determining whether a claim has been stated, a district court's review is limited to the face of the complaint and judicially noticeable information. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  The court must accept as true all well-pleaded factual allegations and construe them in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  But the court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

## IV.   DISCUSSION

As noted above, Mr. Pastore alleges seven claims against Defendants:  (1) retaliation for exercise of the right to petition government for redress under the First Amendment to the United States Constitution and Article I, Section 3 of the California Constitution; (2) deprivation of the Fourteenth Amendment right to equal protection in violation of 42 U.S.C. § 1983; (3) inverse condemnation (taking) in violation of the Fifth Amendment to the United States Constitution and Article I, Section 19 of the California Constitution; (4) deprivation of substantive and procedural due process in violation of the Fourteenth Amendment to the United States Constitution and Article I, Sections 7 and 15 of the California Constitution; (5) deprivation of California

Case No.: 15-cv-01844-EJD
ORDER GRANTING DEFS.' MOT. TO DISMISS FIRST AM. COMPL.
7

United States District Court
Northern District of California

1    constitutional rights in violation of the Tom Bane Civil Rights Act (the "Bane Act"), Cal. Civil

2    Code § 52.1; (6) trespass; and (7) conversion.  *See* FAC ¶¶ 18–51.  Except for the takings claim,

3    which is brought against the County only, all claims are asserted against all Defendants.  *See id.*

4        Defendants argue that each of Mr. Pastore's seven claims must be dismissed for failure to

5    state a claim for relief.  *See* Mot. 1–2.  Defendants further argue that the FAC is barred under the

6    doctrine established by the United States Supreme Court in *Heck v. Humphrey*, 512 U.S. 477

7    (1994), pursuant to which a civil rights complaint for money damages must be dismissed if

8    judgment in favor of the plaintiff would undermine the validity of the plaintiff's conviction

9    sentence.  *See id.* at 15–16.  Mr. Pastore counters that he has adequately alleged each claim, *see*

10   Opp'n 3–7, and that the FAC is not barred under the *Heck v. Humphrey* doctrine because it no

11   longer contains allegations regarding Mr. Pastore's four misdemeanor convictions, so that the

12   FAC "remains viable as to actions of Defendants not related to those four counts," Opp'n 7.

13       The Court addresses these arguments in turn, beginning with whether Mr. Pastore has

14   stated a claim for relief for any violation of federal law—*i.e.*, of the United States Constitution—

15   in Claims 1–4.  Although Claims 1, 3, and 4 also allege violations of the California Constitution,

16   the Court will address those allegations in its discussion of Mr. Pastore's state law claims.  The

17   Court also notes that it will construe all of Mr. Pastore's claims for violation of the United States

18   Constitution under the framework of 42 U.S.C. § 1983, although the FAC only expressly asserts §

19   1983 as the mechanism for Claims 1 and 2.

20       **A.    Federal Claims**

21       Title 42 U.S.C. § 1983 "is a mechanism for vindicating federal statutory or constitutional

22   rights."  *Maney v. Brown*, 91 F.4th 1296, 1302 (9th Cir. 2024) (quoting *Stilwell v. City of*

23   *Williams*, 831 F.3d 1234, 1240 (9th Cir. 2016)).  That is, § 1983 abrogates the sovereign immunity

24   that generally insulates governmental entities from unconsented suits by permitting an individual

25   to bring suit against "[e]very person who, under color of any statute, ordinance, regulation,

26   custom, or usage, of any State" deprives the plaintiff of "any rights, privileges, or immunities

27   secured by the Constitution and laws."  42 U.S.C. § 1983; *see Owen v. City of Independence*, 445

28   Case No.: 15-cv-01844-EJD
     ORDER GRANTING DEFS.' MOT. TO DISMISS FIRST AM. COMPL.

U.S. 622, 647 (1980).  "To succeed on a § 1983 claim, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federal constitutional or statutory right."  *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011).  In addition, "[t]he doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'"  *Wood v. Moss*, 572 U.S. 744, 757 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).  Further, even if a claim under § 1983 is established against an individual, "municipalities may only be held liable under section 1983 for constitutional violations resulting from official . . . policy or custom."  *Banavidez v. County of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

The Court notes that Defendants do not contest the sufficiency of the FAC's allegations as to whether any of the challenged conduct was committed by persons acting under the color of law, or as to the County's municipal liability under *Monell* should an underlying constitutional violation be established.  *See generally* Mot.  The Court therefore assumes, for the purpose of this Order, that Mr. Pastore has sufficiently pleaded the color of law element and *Monell* liability for each of the four claims for violations of the United States Constitution.  *See Kolstad v. County of Amador*, No. CIV 2:13–01279, 2013 WL 6065315, at *2 n.1 (E.D. Cal. Nov. 14, 2013) ("Because defendants do not raise the issue, the court assumes that plaintiffs have sufficiently pled a claim against the County for municipal liability under *Monell* . . . for the purposes of this motion to dismiss.") (internal citation omitted).

The Court now turns to each of the first four claims in turn.

### 1.   Claim 1 (Violation of First Amendment Right to Petition Government for Redress of Grievance)

Mr. Pastore's first claim alleges that Defendants retaliated against him, including by "falsely accusing and charging him with having performed unlawful acts, both civil and criminal,

in relation to [his] properties," because he exercised his First Amendment right to bring legal action against the County.  *See* FAC ¶¶ 18–23.  The First Amendment to the United States Constitution prevents federal and state governments from abridging "the right of the people ... to petition the Government for a redress of grievances."  U.S. Const. amend. I; *see also Edwards v. South Carolina*, 372 U.S. 229, 235 (1963) (noting that the right to petition has been incorporated against the States).  To state a § 1983 claim for retaliatory conduct in response to the exercise of his First Amendment rights, Mr. Pastore must plead that (1) he "engaged in a constitutionally protected activity"; (2) "as a result, he was subjected to adverse action by [Defendants] that would chill a person of ordinary firmness from continuing to engage in the protected activity"; and (3) "there was a substantial causal relationship between the constitutionally protected activity and the adverse action."  *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (citing *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)).

Defendants do not contest the first element of Mr. Pastore's retaliation claim, but argue that the FAC does not allege either of the second or third elements necessary for a retaliation claim, *i.e.*, that Defendants' actions would chill protected speech and that Mr. Pastore's protected speech was a substantial cause of Defendants' actions.  *See* Mot. 6–8.  Mr. Pastore responds that the FAC "alleges . . . that Defendants' code enforcement actions against him, prosecutions, and solicitation of a complaint against his parcels based on false pretenses would chill a person of ordinary firmness from continuing to engage in the protected activity, and that County officials had no other basis" for their actions.  Opp'n 3; *see id.* at 3–4.  The Court evaluates the second and third elements of the retaliation claim in turn.

### i.     Adverse Action by Defendants

The FAC alleges the following actions by Defendants:  (1) Mr. Fitzpatrick, Mr. Falcone, and Ms. Bolster-Grant claimed to have received one or more citizen complaints about the Properties despite knowing that no such complaint existed, *see* FAC ¶ 7; (2) Mr. Edler and Mr. Falcone inspected Parcel 13 on April 9, 2014 and claimed to find fire hazards, despite the Properties having burned to the ground in 2008 such that "there was nothing left that could present

a fire hazard," *id.* ¶ 8; (3) County employees entered the Properties in June 2014—despite not having an inspection or search warrant for Parcel 12—and confiscated items that Mr. Pastore had moved pursuant to a County abatement order, *id.* ¶ 9; (4) the County issued an abatement order requiring removal of all cannabis plants despite the lawful presence of the plants, *id.* ¶ 11; (5) in August 2014, Ms. Bolster-Grant and other County employees destroyed 30 lawfully grown cannabis plants, *id.* ¶ 12; (6) agents for the County solicited a false accusation from DFFP that Mr. Pastore had performed unlawful timber operations on the Properties, *id.* ¶ 13; (7) the County initiated criminal prosecutions of Mr. Pastore for marijuana cultivation and timber harvesting, *id.* ¶ 15; and (8) Mr. Falcone informed Mr. Pastore that water could not be pumped from the permitted well on the Properties unless Mr. Pastore built a permitted residence, which the County is unlikely to permit due to the steep terrain of the Properties, *id.* ¶ 16.

That is, Mr. Pastore has alleged that the Individual Defendants and the County engaged in a series of actions including making or soliciting false statements about ordinance violations on the Properties, destruction of lawful property, and the filing of a criminal complaint. Taking these allegations as true and drawing all inferences in Mr. Pastore's favor at the pleading stage, the Court finds that Mr. Pastore sufficiently alleges that Defendants took actions with respect to the Properties that together would be likely to chill a person of ordinary firmness from engaging in the protected right to petition the government for redress of a grievance. *See White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000) (finding lengthy government investigation chilled person of ordinary firmness from engaging in activities including petitions for redress of grievances, even though agency "did not ban or seize the plaintiffs' materials" and "ultimately decided not to pursue either criminal or civil sanctions"); *cf. Kolstad v. County of Amador*, No. CIV 2:13–01279, 2013 WL 6065315, at *5 (E.D. Cal. Nov. 14, 2013) (finding no adverse action where defendants conduct "amount[ed] only to 'threats and harsh words'") (quoting *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 2003)).

**ii.    Substantial Causal Relationship**

With respect to whether there existed a substantial causal relationship between Mr.

Case No.: 15-cv-01844-EJD
ORDER GRANTING DEFS.' MOT. TO DISMISS FIRST AM. COMPL.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Pastore's protected activity and Defendants' actions, Defendants argue that no allegations support

2  an inference that the County would not have initiated code enforcement actions as to the

3  Properties but for Mr. Pastore having previously sued the County.  *See* Mot. 7–8.  Defendants

4  assert that, as alleged in the FAC, "the County received a citizen complaint, investigated per

5  standard practice and procedure, identified land use violations, and issued an abatement order."

6  *Id.* at 7 (citing FAC ¶¶ 7–8).  Mr. Pastore counters that the FAC alleges that Defendants brought

7  code enforcement actions against him that were knowingly based on false pretenses, in that the

8  County allegedly knew that there had been no citizen complaint and no illegal timber operations

9  on the Properties.  *See* Opp'n 3–4 (citing FAC ¶¶ 7, 13).  Mr. Pastore argues that these allegations,

10  taken as true, establish that Defendants had no reasonable and principled basis for their code

11  enforcement actions, independent of a retaliatory motive.  *See id.*  Defendants respond that the

12  "County's code enforcement process is entirely complaint-based, in that County Code Enforcement

13  only investigates a potential code violation if they receive a citizen complaint," Reply 2, but the Court

14  is unable to consider such a fact because Defendants have not shown that it is either alleged in the

15  FAC or otherwise judicially noticeable.  *See, e.g.*, *MGIC Indem. Corp.*, 803 F.2d at 504.

16          The Court agrees with Mr. Pastore that the FAC's allegations—which the Court must take

17  as true at the pleading stage—are sufficient for the Court to draw a reasonable inference that the

18  County had no proper basis for its code enforcement actions.  However, as Defendants note, the

19  allegations do not support the inference that the County would not have initiated its code

20  enforcement actions "but for [Mr. Pastore] previously suing the County," Mot. 7—*i.e.*, that there

21  exists a substantial causal relationship between a prior suit and the code enforcement actions.  *See*

22  *Blair*, 608 F.3d at 543.  Mr. Pastore does not allege that he engaged in protected activity prior to

23  the April 2014 inspection of Parcel 13.  *See generally* FAC.  The Court might guess at the

24  existence of such a lawsuit from a single allegation in the FAC stating that Mr. Pastore "is

25  informed and believes, and alleges thereon that [the County] and its agents are harassing him in

26  retaliation for previous lawsuit of [Mr. Pastore] against [the County] which resulted in a financial

27  settlement for unlawful destruction of medical marijuana plants growing on his property."  FAC ¶

28  Case No.: 15-cv-01844-EJD
ORDER GRANTING DEFS.' MOT. TO DISMISS FIRST AM. COMPL.

17.  However, the FAC provides no indication of when this lawsuit or settlement may have occurred, and therefore fails to show a substantial causal relationship between the lawsuit and the County's alleged retaliatory code enforcement actions.  *See, e.g.*, *Kolstad*, 2013 WL 6065315, at *5 ("[The] plaintiffs' allegations do not 'provide a chronology of events from which an inference can be drawn that actions taken by the defendants were motivated by or substantially caused by the plaintiffs' exercise of their First Amendment rights.'") (quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 195 (2d Cir.1994)) (alterations omitted).

The FAC's only other allegations related to legal action taken by Mr. Pastore against the County relate to claims filed after the initial April 2014 inspection.  *See id.* ¶¶ 10, 12.  The Court accordingly finds that Mr. Pastore has not alleged facts from which the Court can plausibly infer that Mr. Pastore filed a lawsuit against the County prior to the events of April 2014 that was a substantial causal factor animating Defendants' alleged retaliatory conduct.  *See Lacey v. Maricopa County*, 693 F.3d 896, 917 (9th Cir. 2012) ("[Plaintiff] must allege facts ultimately enabling him to 'prove the elements of retaliatory animus as the cause of injury,' with causation being 'understood to be but-for causation.'") (quoting *Hartman v. Moore*, 247 U.S. 250, 260 (2006)).  The Court will therefore dismiss this claim with leave to amend.

### 2.   Claim 2 (Violation of Fourteenth Amendment Right to Equal Protection)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  Mr. Pastore's second claim alleges that Defendants violated his rights under the Equal Protection Clause because they "singled [him] out . . . by invidiously discriminating against him [and] treated [him] adversely compared to others similarly situated due solely to an illegitimate animus."  FAC ¶ 25.  Mr. Pastore further alleges that Defendants undertook their discriminatory actions "in furtherance of their plan of retaliation" for Mr. Pastore's exercise of his right to bring legal action

against the County and its employees.  *Id.*

"When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim."  *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  To state an equal protection claim for a class of one, Mr. Pastore must plead that Defendants "(1) intentionally (2) treated [him] differently than other similarly situated property owners, (3) without a rational basis."  *Gerhart v. Lake County  Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010) (citing *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)).  The Ninth Circuit has recently clarified the degree of similarity needed to make a plaintiff "similarly situated" in the class of one context, joining the First, Second, Sixth, and Eleventh Circuits in "holding that a class-of-one plaintiff must be similarly situated to the proposed comparator in all material respects."  *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022).

Defendants argue that Mr. Pastore's allegation that the County "treated [him] adversely to others similarly situated" is too conclusory to state an equal protection claim.  Mot. 9 (quoting FAC ¶ 25); *see id.* at 8–10.  Mr. Pastore counters that the FAC's allegations that Defendants initiated code enforcement actions against him, despite knowing that no basis for enforcement existed, shows that he was "similarly situated to all property owners in the [C]ounty who County officials had no reasonable basis to believe were engaged in unlawful activities regarding the use of their properties."  Opp'n 4.  However, Mr. Pastore points to no allegations regarding comparable property owners who were treated differently than Mr. Pastore, *see generally* Opp'n 4–5, and the Court can find none besides the sole conclusory allegation quoted by Defendants. The FAC accordingly falls far short of the pleading requirement that Mr. Pastore show that he is similarly situated to others "in all material respects" and was nonetheless treated differently.  *See SmileDirectClub*, 31 F.4th at 1123; *see also, e.g.*, *Cuviello v. City of Belmont*, No. 23-cv-00029, 2023 WL 4915066, at *10 (N.D. Cal. July 31, 2023) ("For example, comparators have been held to be 'similarly situated' where their interests concerned the 'same neighborhood block; the same

1   type of property; the same city water line []; [or the] same type of road approach [].'") (internal

2   alterations and citations omitted) (quoting *SmileDirectClub*, 31 F.4th at 1123); *Bd. of Trs. of*

3   *Leland Stanford Junior Univ. v. County of Santa Clara*, No. 18-cv-07650, 2019 WL 5087593, at

4   *5–6 (N.D. Cal. Oct. 10, 2019) (noting that plaintiffs must allege facts showing "an extremely

5   high degree of similarity" with comparators and dismissing class of one claim where "the FAC

6   [did] not identify a single similarly situated comparator under the standards set forth above")

7   (citing cases).

8           Defendants also argue that code enforcement is an inherently discretionary government

9   exercise that is incompatible with a class of one theory. *See* Mot. 9–10.  Because the Court finds

10  that Mr. Pastore's allegations do not rise to the requisite specificity as to comparators, it need not

11  and does not address this argument.  However, the Court recognizes that the Supreme Court has

12  held that "some forms of state action . . . by their nature involve discretionary decisionmaking

13  based on a vast array of subjective, individualized assessments," and that "[i]n such cases treating

14  like individuals differently is an accepted consequence of the discretion granted to governmental

15  officials." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008).  The Court therefore notes

16  its skepticism of the cognizability of a class of one equal protection claim based on allegedly

17  disparate code enforcement by a county.  *See, e.g.*, *Kolstad*, 2013 WL 6065315, at *7 (finding

18  "questionable" plaintiffs' class of one claim based on county defendant's code enforcement

19  actions due to discretionary nature of enforcement decisions).

20          Accordingly, the Court will dismiss this claim with leave to amend.

21          **3.      Claim 3 (Violation of Fifth Amendment Right Against Taking)**

22          "The Takings Clause of the Fifth Amendment provides that 'private property' shall not 'be

23  taken for public use, without just compensation.'" *See Ballinger v. City of Oakland*, 24 F.4th

24  1287, 1292 (9th Cir. 2022) (quoting U.S. Const., amend. V); *see also id.* (noting that Takings

25  Clause is incorporated to the states via the Fourteenth Amendment) (citing *Chi., Burlington &*

26  *Quincy R.R. Co. v. City of Chicago*, 166 U.S. 226, 238–39 (1897)).  Mr. Pastore's third claim

27  alleges that the County's "intentional actions . . . unconstitutionally damaged plaintiffs' property

28  Case No.: 15-cv-01844-EJD
    ORDER GRANTING DEFS.' MOT. TO DISMISS FIRST AM. COMPL.

United States District Court
Northern District of California

1    interests and for that reason constitute a violation of the constitutional ban on taking without just

2    compensation."  FAC ¶ 30; *see id.* ¶¶ 28–33.

3            Defendants argue that Mr. Pastore's claim fails because public nuisance abatement efforts

4    do not constitute a taking in violation of the Fifth Amendment, and the County here removed or

5    confiscated Mr. Pastore's property—*i.e.*, medical marijuana plants, solar panels, a water pump,

6    batteries, wiring, and a back-up generator—pursuant to a lawful administrative hearing officer's

7    decision and abatement order based on the County Code.  *See* Mot. 14–15 (citing FAC ¶¶ 9, 30;

8    *Westin v. City of Calabasas*, No. CV 22-03788, 2022 WL 16894879, at *2–3 (C.D. Cal. Oct. 24,

9    2022)).  Mr. Pastore does not address Defendants' arguments regarding the confiscation or

10   removal of any property.  *See generally* Opp'n.  However, Mr. Pastore argues that the FAC

11   sufficiently pleads a taking because it alleges that (1) Defendants unlawfully deprived Mr. Pastore

12   of any economically viable use of the Properties by prohibiting him from pumping water from his

13   permitted well without first building a permitted residence, and (2) the terrain of the Properties

14   "renders it extremely unlikely that the County would ever issue him permits."  Opp'n 5 (citing

15   FAC ¶¶ 16, 31–32)).

16           First, with respect to the items that Defendants allegedly removed or confiscated from the

17   Properties, the Court notes that the County held an administrative hearing regarding the County's

18   removal of, "[a]mong other things, multiple solar panels, electrical wiring, batteries, generators,

19   and other items that caused an imminent danger" from the Properties on June 2, 2014.  *See*

20   Thompson Decl., Exh. C, at 2.  The administrative hearing officer held that the County's conduct

21   was authorized by the County Code.  *See id.*  Any property of Mr. Pastore's that was properly

22   removed pursuant to the County Code as an abatement measure may not form the basis of a

23   takings claim, and the Court will dismiss Mr. Pastore's claim with respect to such property

24   without leave to amend.  *See Wang v. City of Cupertino*, No. 22-cv-06822, 2023 WL 4626943, at

25   *12 (N.D. Cal. July 19, 2023) (dismissing takings claim based on abatement removal of structure

26   without leave to amend and noting that "courts have consistently held that a State need not provide

27   compensation when it diminishes or destroys the value of property by . . . abating a public

28   Case No.: 15-cv-01844-EJD
ORDER GRANTING DEFS.' MOT. TO DISMISS FIRST AM. COMPL.

United States District Court
Northern District of California

1  nuisance") (quoting *Fouts v. County of Clark*, 76 F. App'x 825, 827 (9th Cir. 2003)).

2  With respect to Mr. Pastore's water pump, the FAC alleges that the County "purported to

3  find violations[] including . . . water pumping" following its April 9, 2014 inspection, FAC ¶ 8;

4  that the County confiscated the water pump controller on June 2, 2014, *id.* ¶ 9; that Mr. Falcone

5  informed Mr. Pastore on April 7, 2015, that Mr. Pastore "could not pump water from the permitted

6  well on his property unless he first builds a permitted residence," *id.* ¶ 16; and that "[g]iven the

7  terrain, it is highly unlikely that [the County] would ever allow [Mr. Pastore] to build a residence"

8  on the Properties, *id.*  Taking these allegations as true and drawing all inferences in Mr. Pastore's

9  favor, the FAC alleges, in essence, that the County confiscated Mr. Pastore's water pump

10 controller on June 2, 2014, after finding Mr. Pastore engaged in water pumping violations, and

11 that Mr. Pastore believes that the County will not permit him to build a residence on the Properties

12 so that he may pump water from his well.  Any takings claim based on the confiscation of the

13 water pump controller fails for the same reasons stated above regarding the removal of Mr.

14 Pastore's other property on June 2, 2014, *i.e.*, there can be no takings claim based on the County's

15 actions to abate a public nuisance.  *See* Thompson Decl., Exh. B, at 2 (modifying abatement order

16 to prohibit Mr. Pastore from "further . . . riparian violations"); *id.* at Exh. C, at 2 (finding County's

17 June 2, 2014 abatement actions authorized by County Code); *Wang*, 2023 WL 4626943, at *12.

18 To the extent Mr. Pastore's claim is based on his belief that the County will deny him a building

19 permit in the future, he has not stated a ripe takings claim.  *See Horne v. Dep't of Agric.*, 569 U.S.

20 513, 525–26 (2013) ("[A] Fifth Amendment claim is premature until it is clear that the

21 Government has both taken property *and* denied just compensation.").

22 Accordingly, the Court will dismiss Mr. Pastore's Fifth Amendment takings claim.  The

23 Court will only permit amendment to the extent Mr. Pastore is able to allege that he has applied

24 for and been denied a permit to build a residence on the Properties.

25              **4.      Claim 4 (Violation of Fourteenth Amendment Right to Due Process)**

26 Mr. Pastore's last claim brought pursuant to alleged violations of the United States

27 Constitution alleges that Defendants violated his substantive and procedural due process rights

1    under the Fourteenth Amendment.  *See* FAC ¶¶ 34–39.  The Court addresses the substantive and

2    procedural prongs in turn, beginning with the procedural claim.

3                   a.        **Procedural Due Process**

4           "To obtain relief on a procedural due process claim, the plaintiff must establish the

5    existence of '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of

6    the interest by the government; and (3) lack of process.'"  *Shanks v. Dressel*, 540 F.3d 1082, 1090

7    (9th Cir. 2008) (internal alteration omitted) (quoting *Portman v. County of Santa Clara*, 995 F.2d

8    898, 904 (9th Cir. 1993)).  Defendants argue that Mr. Pastore's procedural due process claim is

9    founded on the allegation that the County deprived him of his property interests "without notice

10   and without an opportunity for a meaningful hearing," but that Mr. Pastore in fact appealed the

11   County's abatement order and made his case before an administrative hearing officer.  *See* Mot.

12   10–11 (quoting FAC ¶ 35).  Mr. Pastore argues that the FAC alleges that the County confiscated

13   his property—even after Mr. Pastore fully complied with the abatement order regarding the use of

14   solar panels for a water pumping system—"without affording him any notice that the solar panels

15   would be so confiscated if he did comply with the abatement order, any notice that any of his other

16   property would be removed, or any opportunity to be heard regarding either."  Opp'n 5–6.

17          As described above, *see supra*, at Part II, the Court has taken judicial notice of orders on

18   administrative hearings held by the County related to this action.  Those documents indicate as

19   follows:  (1) on July 24, 2014, Mr. Pastore appeared for an administrative hearing on his appeal of

20   the County's abatement order issued on April 9, 2014, regarding Parcel 13, *see* Thompson Decl.,

21   Exh. B, at 1; (2) that the administrative hearing officer considered the submitted documentary and

22   oral evidence and found that the County had issued a valid abatement order after properly

23   determining the existence of a public nuisance, *see id.* at 1–2; (3) that on May 29, 2014, an

24   administrative hearing officer had affirmed the abatement order and provided the property holders

25   with additional time to comply with the County's abatement order issued on May 27, 2014,

26   regarding Parcel 13, *see* Thompson Decl., Exh. C, at 2; (4) that the County held administrative

27   hearings on September 25, 2014 and November 20, 2014 regarding the May 27, 2014 abatement

28   Case No.: 15-cv-01844-EJD
     ORDER GRANTING DEFS.' MOT. TO DISMISS FIRST AM. COMPL.

United States District Court
Northern District of California

order, *see id.* at 1; (5) that Mr. Pastore was present at the September 25, 2014 hearing, *see id.*; and (6) that the administrative hearing officer received witness testimony and evidence and subsequently found that the County's removal of property from Parcel 13 on June 2, 2014 was authorized as a nuisance abatement, *see id.* at 2. Although Mr. Pastore alleges that Defendants "depriv[ed] him of his property without notice and without an opportunity for a meaningful hearing," FAC ¶ 36, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice." *In re Gilead Scis. Sec. Litig.*, 536 F.3d at 1055. Mr. Pastore does not allege any procedural defect in the hearings themselves. *See generally* FAC.

Because judicially noticeable documents before the Court show that Mr. Pastore was afforded at least one hearing on each of the two abatement orders at issue, that he personally appeared at hearings on each of the orders, and that the presiding administrative hearing officer received evidence related to both abatement orders before determining the validity of the orders and the County's subsequent conduct, the Court finds that Mr. Pastore has not alleged a violation of his right to procedural due process related to the County's removal and confiscation of his property. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (internal quotation marks and citation omitted); *see also , e.g.*, *Contasti v. City of Solana Beach*, 644 F. App'x 743, 744 (9th Cir. 2016) (finding procedural due process claim failed as a matter of law where the defendant "provided notice of its intent to consider the relevant permit applications, held a public hearing on the applications, and issued a formal resolution denying the applications"); *Sheikh v. Med. Bd. of Cal.*, 471 F. App'x 713, 713 (9th Cir. 2012) ("The district court properly dismissed Sheikh's procedural due process claim because the process Sheikh was afforded, which included a full hearing before an administrative law judge, and the California statutory scheme under which she was afforded that process, provided a meaningful opportunity to be heard.") (citing *Mathews*, 424 U.S. at 333).

The Court will accordingly dismiss Mr. Pastore's procedural due process claim brought under the Fourteenth Amendment. Mr. Pastore may only amend if he can add allegations

Case No.: 15-cv-01844-EJD
ORDER GRANTING DEFS.' MOT. TO DISMISS FIRST AM. COMPL.

United States District Court
Northern District of California

1   regarding some procedural defect in the administrative hearings.

2                               **b.      Substantive Due Process**

3          "To state a substantive due process claim, the plaintiff must show as a threshold matter that

4   a state actor deprived it of a constitutionally protected life, liberty or property interest." *Shanks v.*

5   *Dressel*, 540 F.3d 1082, 1087 (9th Cir. 2008) (citing *Action Apartment Ass'n, Inc. v. Santa Monica*

6   *Rent Control Bd.*, 509 F.3d 1020, 1026 (9th Cir. 2007)).  That is, "[s]o-called 'substantive due

7   process' prevents the government from engaging in conduct that 'shocks the conscience' . . . or

8   interferes with the rights 'implicit in the concept of ordered liberty.'"  *United States v. Salerno*,

9   481 U.S. 739, 746 (1987) (internal citations omitted).  Where a plaintiff brings a substantive due

10  process claim based on municipal procedures, the plaintiff "must show the procedures are 'clearly

11  arbitrary and unreasonable, having no substantial relation to the public health, safety, morals or

12  general welfare."  *Yagman v. Garcetti*, 852 F.3d 859, 867 (9th Cir. 2017) (quoting *Samson v. City*

13  *of Bainbridge Island*, 683 F.3d 1051, 1058 (9th Cir. 2012)).  Further, government procedures are

14  "presumed valid, and this presumption is overcome only by a clear showing of arbitrariness and

15  irrationality."  *Id.* (quoting *Samson*, 683 F.3d at 1058).

16         Defendants argue that Mr. Pastore does not allege an unconstitutional deprivation of a

17  property interest because the County's removal of property was determined to be an authorized

18  abatement of a public nuisance.  *See* Mot. 10–12.  Mr. Pastore argues only that the County

19  confiscated his property without proper notice or hearing after he had fully complied with the

20  abatement order regarding the use of his solar panels, and that "the removal of his personal

21  property without any justifiable government interest is shocking to the conscience and violated his

22  substantive due process rights."  Opp'n 6; *see id.* at 5–6.  As described above, *see supra*, at Part

23  IV(A)(4)(a), judicially noticeable documents indicate that the government's actions were related to

24  its legitimate interest in abating public nuisances, and—particularly in light of the formal

25  proceedings related to the County's abatement conduct—the FAC makes no non-conclusory

26  allegations from which the Court may plausibly infer that the County engaged in "clearly arbitrary

27  and unreasonable" conduct that has "no substantial relation to the public['s] . . . general welfare."

28  Case No.: 15-cv-01844-EJD

1    *See Yagman*, 852 F.3d at 867 (citation omitted).  Accordingly, the Court will dismiss Mr.

2    Pastore's substantive due process claim.  *See id.*  Further, in light of the administrative record on

3    the abatement actions, the Court finds that amendment would be futile, so that the dismissal is

4    without leave to amend.  *See, e.g.*, *Wang*, 2023 WL 4626943, at *8 (dismissing substantive due

5    process claim without leave to amend where amendment would be futile).

6         **B.      State Claims**

7         Mr. Pastore's remaining claims allege trespass, conversion, and violations of the California

8    Constitution and the Bane Act.  *See* FAC ¶¶ 18–51.  Defendants raise myriad arguments in support

9    of the dismissal of these state law claims.  *See generally* Mot. 6–15.  However, before evaluating

10   Defendants' arguments regarding whether Mr. Pastore has stated any claim under state law, the

11   Court must first consider whether it retains subject matter jurisdiction following its determinations

12   that each of Mr. Pastore's federal claims must be dismissed.  *See supra*, at Parts IV(A)(1)–(4); *see*

13   *also, e.g.*, *Corral v. Select Portfolio Servicing, Inc.*, 878 F.3d 770, 773 (9th Cir. 2017) (noting that

14   federal courts have an "independent obligation to determine whether subject-matter jurisdiction

15   exists, even in the absence of a challenge from any party") (quoting *Arbaugh v. Y&H Corp.*, 546

16   U.S. 500, 514 (2006)).

17        Mr. Pastore alleges only pendent, or supplemental, jurisdiction over his state law claims.

18   *See* FAC ¶ 6.  "Supplemental jurisdiction over state claims exists when a federal claim is

19   sufficiently substantial to confer federal jurisdiction, and there is 'a common nucleus of operative

20   fact between the state and federal claims.'"  *Pristavec v. Meno Holdings SPV, LP*, 593 F. Supp. 3d

21   930, 943 (N.D. Cal. 2022) (quoting *Brady v. Brown*, 51 F.3d 810, 816 (9th Cir. 1995)).  "The

22   decision whether to continue to exercise supplemental jurisdiction over state law claims after all

23   federal claims have been dismissed lies within the district court's discretion."  *Foster v. Wilson*,

24   504 F.3d 1046, 1051 (9th Cir. 2007) (citing 28 U.S.C. § 1367(c)(3)); *see also Lacey v. Maricopa*

25   *County*, 693 F.3d 896, 940 (9th Cir. 2012) ("The Supreme Court recently held that dismissal of

26   federal claims does not automatically deprive district courts of subject matter jurisdiction over any

27   supplemental claims.") (citing *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)).

28   Case No.: 15-cv-01844-EJD
     ORDER GRANTING DEFS.' MOT. TO DISMISS FIRST AM. COMPL.

United States District Court
Northern District of California

1    "In determining whether to exercise supplemental jurisdiction, the court should balance

2    'judicial economy, convenience, fairness, and comity.'" *Ramirez v. Lococo's Cucina Rustica*, No.

3    16-cv-04362, 2018 WL 368559, at *4 (N.D. Cal. Jan. 10, 2018) (quoting *Carnegie-Mellon Univ.*

4    *v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).  The Supreme Court has recognized that "in the usual

5    case in which all federal-law claims are eliminated before trial, the balance of factors to be

6    considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and

7    comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."

8    *Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7; *see also, e.g.*, *Acri v. Varian Assocs., Inc.*, 114 F.3d

9    999, 1001 (9th Cir. 1997) (same).  However, the balance of the four factors may favor retention of

10   supplemental jurisdiction when, for example, a court has invested considerable resources on the

11   state law claims.  *See Ramirez*, 2018 WL 368559, at *4 (citing cases).

12       Here, the four factors weigh in different directions.  Judicial economy would likely be best

13   served by a declination of supplemental jurisdiction because, despite the age of this action—the

14   original complaint was filed in April 2014, *see* ECF No. 1— the instant Motion is the first

15   challenge to the sufficiency of Mr. Pastore's allegations.  The action was stayed for seven years,

16   from shortly after Mr. Pastore effected service to the Court's receipt in January 2022 of Mr.

17   Pastore's notice of the termination of his criminal case and appeal.  *See* ECF Nos. 32, 34.  Due to

18   issues such as the health of counsel and substitution of counsel, the case did not advance beyond

19   case management statements until Mr. Pastore filed the operative FAC in April 2023, and no

20   discovery had occurred as of the filing of the FAC.  *See* ECF Nos. 36, 38, 40–44, 46, 48, 50, 53.

21   This matter is thus in the earliest procedural stages of a case, so that judicial economy would not

22   be offended by dismissal of the state law claims.  *See Ramirez*, 2018 WL 368559, at *4 (noting

23   that dismissal of case "does not offend principles of judicial economy" where court had not issued

24   substantive rulings on state law matters and pending motion was first contested motion in action).

25       Convenience appears to be a neutral factor.  The question of fairness favors a decision to

26   retain jurisdiction because, given the delay caused by the multi-year stay, Mr. Pastore would

27   doubtless face statute of limitations challenges should he now raise his claims in state court.

28   Case No.: 15-cv-01844-EJD
     ORDER GRANTING DEFS.' MOT. TO DISMISS FIRST AM. COMPL.

However, Mr. Pastore likely has a strong argument for equitable tolling of the relevant statutes of limitations.  The last factor—comity—favors dismissal of the state law claims because, as district courts across California have held, "the primary responsibility for developing and applying state law rests with the California courts."  *Sheppard v. Staffmark Inv., LLC*, No. 20-cv-05443, 2021 WL 690260, at *8 (N.D. Cal. Feb. 23, 2021); *see also, e.g.*, *Ward v. Cal. Dep't of Corr. & Rehabilitation*, No. EDCV 10–856, 2016 WL 9724965, at *5 (C.D. Cal. Mar. 8, 2016) ("[P]rimary responsibility for developing and applying state law rests with the state courts.") (quoting *Armstrong ex rel. Steffensen v. Alicante Sch.*, 44 F. Supp. 2d 1087, 1090 (E.D. Cal. 1999)); *Penny v. Bastuba*, No. 21-CV-630, 2021 WL 4993483, at *3 (S.D. Cal. Oct. 26, 2021) (same).

Balancing the above considerations, the Court finds that the factors of judicial economy, convenience, fairness, and comity together favor declining to exercise supplemental jurisdiction.  Accordingly, the Court will dismiss Mr. Pastore's state law claims without prejudice to their refiling in state court.  However, should Mr. Pastore choose to file an amended complaint as permitted by this Order, the Court also encourages Mr. Pastore to amend the complaint to address the deficiencies in his state law claims identified in Defendants' Motion.  Further, to the extent Mr. Pastore seeks to allege independent claims for violations of the California Constitution, as in Claims 1, 3, and 4 of the FAC, the Court notes that California law appears to preclude actions for damages for several constitutional provisions.  *See Julian v. Mission Cmty. Hosp.*, 11 Cal. App. 5th 360, 391 (2017) ("There is no cause of action for damages for alleged violations of California Constitution, article I, . . . section 3, subdivision (a) (right to petition the government)."); *Astorga v. County of Los Angeles*, No. 20-CV-09805, 2022 WL 3449810, at *3 (C.D. Cal. Feb. 9, 2022) (dismissing claims for monetary damages under Sections 2, 3, 7, and 13 of Article I of the California Constitution); *Reese-Bey v. Ochoa*, No. CV 20-06693, 2020 WL 11767431, at *5 (C.D. Cal. Sept. 29, 2020) (""It is undisputed that the California Constitution does not provide a direct cause of action for damages for either equal protection or a due process liberty interest violation.") (citation omitted).

United States District Court
Northern District of California

### C.    *Heck v. Humphrey* Doctrine

Defendants lastly raise an argument that the FAC must be dismissed because a civil judgment in Mr. Pastore's favor in this action would undermine the validity of Mr. Pastore's related criminal convictions and thereby violate the doctrine established by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994).  *See* Mot. 15–16.  Because the Court has determined that Mr. Pastore's claims must all be dismissed for failure to state a claim and the Court's subsequent lack of subject matter jurisdiction, it need not and does not reach this additional argument.

## V.    ORDER

For the foregoing reasons, the Court hereby ORDERS as follows:

1. With respect to Mr. Pastore's claims for violations of the United States Constitution:

   a. The claim for violation of the First Amendment right to petition the government for redress is DISMISSED WITH LEAVE TO AMEND;

   b. The claim for violation of the Fourteenth Amendment right to equal protection is DISMISSED WITH LEAVE TO AMEND;

   c. The claim for violation of the Fifth Amendment right to be free of unlawful takings is DISMISSED WITH LEAVE TO AMEND as specified, *see supra*, at Part IV(A)(3);

   d. The claim for violation of the Fourteenth Amendment right to procedural due process is DISMISSED WITH LEAVE TO AMEND as specified, *see supra*, at Part IV(A)(4)(a); and

   e. The claim for violation of the Fourteenth Amendment right to substantive due process is DISMISSED WITHOUT LEAVE TO AMEND.

2. Mr. Pastore's state law claims are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.

3.  Mr. Pastore may file a Second Amended Complaint within 21 days of the entry of this Order.

**IT IS SO ORDERED.**

Dated: March 11, 2024

EDWARD J. DAVILA
United States District Judge

Case No.: 15-cv-01844-EJD
ORDER GRANTING DEFS.' MOT. TO DISMISS FIRST AM. COMPL.
25